IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JOHNNIE HILL                                                                                   PLAINTIFF
ADC #82167

v.                          CASE NO.: 5:07CV00270 JLH/BD

LARRY NORRIS                                                                                 DEFENDANT

RECOMMENDED DISPOSITION

I.     **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District Court Chief Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date you receive the Recommended Disposition. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

**II.     Background:**

Plaintiff is currently an inmate in the Varner Super Max Unit of the Arkansas Department of Correction ("ADC"). In his complaint, Plaintiff claims that he is permanently segregated from the general population of inmates in the Varner Unit in violation of his Constitutional rights. Plaintiff alleges that he is now segregated from the general prison population as a result of a 1991 "disciplinary conviction" for raping an inmate while both were prisoners in the custody of the ADC.

Plaintiff attempts to state two claims. First, he alleges that he was denied due process during the 1991 disciplinary hearing in which he was found guilty of having raped a fellow inmate; second, he complains that his 2005 reassignment to single-cell housing, based in part on the 1991 disciplinary finding, violated his Constitutional rights.

Plaintiff's complaints about his 1991 disciplinary hearing are that: (1) he was not permitted to confront the witnesses against him; (2) he was not allowed to introduce physical evidence in his favor; (3) he was denied counsel; (4) he was not indicted by a grand jury; and (5) he was not convicted by a jury.

In his second claim, Plaintiff also alleges that he was improperly reclassified fourteen years after the 1991 disciplinary hearing, as a result of the Prison Rape Elimination Act passed by Congress in 2003. This reclassification resulted in his removal from the general prison population and placement in single-cell housing.

Plaintiff names Larry Norris, Director of the ADC, as the Defendant, and sues Mr. Norris in his official capacity. He attaches to his complaint several documents, including: a memorandum discussing the Prison Rape Elimination Act, an inter-office communication between Plaintiff and Warden Harris, the major disciplinary issued to Plaintiff on July 1, 1991, Plaintiff's Disciplinary Hearing Action papers dated July 5, 1991, Plaintiff's disciplinary violation report, and several grievances filed by Plaintiff.

Based on Plaintiff's complaint and the attachments that he has provided, this Court finds that Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983.[1] Accordingly, the Court recommends DISMISSAL of Plaintiff's complaint, with prejudice.

**III.   Discussion:**

Federal courts are required to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915(e). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are: (a) legally frivolous

---

[1] Plaintiff also submitted a Brief in Support of 42 U.S.C. § 1983 or 28 U.S.C. § 2254 Petition (#3). In the Brief, Plaintiff argues that the Prison Rape Elimination Act of 2003 and the ADC's policy AM 05-01 are unconstitutionally vague and, when applied retroactively, constitute ex post facto violations. Plaintiff does not reference the constitutionality of the Prison Rape Elimination Act or AM 05-01 in his complaint. Therefore, that argument is not addressed by the Court. Plaintiff does make some reference to an ex post facto violation in his complaint. Accordingly, that argument will be addressed.

3

or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C § 1915(e)(2).

To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the federal Constitution or laws of the United States.  42 U.S.C. § 1983.  While a court must accept the factual allegations in the complaint as true and hold a plaintiff's pro se complaint "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*), a plaintiff still must assert facts sufficient to state a claim as a matter of law.  *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

    A.    *Procedural Due Process Claim*

In his complaint, Plaintiff claims that, because he was not afforded certain constitutional safeguards during his 1991 disciplinary hearing, his due process rights were violated.  The Supreme Court has held that procedural due process for inmates involved in disciplinary proceedings requires that the inmate: (1) be given written notice of the charges; (2) be afforded the opportunity for a hearing before an impartial tribunal; (3) have a limited right to call witnesses and present documentary evidence in his defense; and (4) be given written statements of the reasons for the hearing officer's decision.  See *Wolf v. McDonnell*, 418 U.S. 539 (1974).  Plaintiff's complaints that he was not provided counsel; that he was not allowed to confront the witnesses against him; that he was not indicted by a grand jury;

and that he was not convicted by a jury are not well taken. As an inmate, Plaintiff is not guaranteed those rights in a disciplinary hearing. Plaintiff's only cognizable due process claim is that he allegedly was denied the "limited" right to present evidence in his favor.

The disciplinary hearing in question was held more than sixteen years ago. Plaintiff's claim is, therefore, time-barred. The statute of limitations for § 1983 actions is the same as a state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 571 U.S. 261, 275, 105 S.Ct. 1938 (1985), *superceded by statute on other grounds as recognized in Jones v. R.R. Donnelly & Sons*, 541 U.S. 369, 379-80, 124 S.Ct. 1836 (2004). In Arkansas, the general personal-injury statute of limitations is three years. See ARK. CODE ANN. § 16-56-105 (Michie 1994). See also *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992) (applying three year statute of limitations to § 1983 claim) and *Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991) (holding that the applicable statute of limitations period for a § 1983 claim in Arkansas is three years).

The grievances that Plaintiff attaches to his complaint are dated June 25, 2007, almost sixteen years after the date of the disciplinary hearing in question. Plaintiff provides no reason for his failure to seek relief in a timely manner. Accordingly, the statute of limitations on Plaintiff's due process claim relating to his 1991 disciplinary hearing has run.

    B.    *Substantive Due Process*

In his complaint, Plaintiff alleges that he was segregated from the general prison population at the Varner Unit in 2005 without due process, and that he remains,

indefinitely, in single-cell housing. In order to prevail on a Fourteenth Amendment due process claim, Plaintiff must demonstrate that he was deprived of life, liberty, or property by government action without due process.

An inmate's liberty interests are significantly different from those of a citizen who is not incarcerated. The liberty interest of a prisoner is limited to freedom from restraint which imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995). Plaintiff cannot make this showing.

The Eighth Circuit has consistently held that administrative and disciplinary segregation, even without cause, are generally not atypical and significant hardships. See *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (thirty-six day stay in isolation after charges were dropped was not an atypical and significant hardship); *Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996). In *Kennedy*, the Court specifically stated "transfer from administrative segregation to punitive isolation [is] not a 'dramatic departure from the basic conditions' of [an inmate's] confinement and thus does not constitute 'the type of atypical significant deprivation in which a state might conceivably create a liberty interest." See *id.* at 643 (quoting *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 2301 (1995)).

Here, Plaintiff does not allege facts sufficient to establish a protected liberty interest. In his complaint, Plaintiff alleges that he has been "permanently segregated" from the

6

general population of inmates at the Varner Unit. Based upon the attachments to the complaint, Plaintiff currently is assigned to single-cell housing. See Deputy/Assistant Director's Decision dated September 17, 2007, attached to Plaintiff's complaint. Such assignment is not, standing alone, punitive. Plaintiff does not allege that his privileges are restricted in any way or that he is unable to earn good-time credits as a result of his housing situation. Plaintiff does not allege any hardship or improper treatment due to his status of confinement aside from his general assertion that he is deprived of the opportunity to live in the general population, a condition of confinement to which he has no constitutional right. Plaintiff fails to explain how the circumstances of his housing amount to an atypical and significant hardship. Therefore, the Court finds that Plaintiff has no liberty interest in avoiding segregation. *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996). See also *Winbush v. Norris*, 2006 WL 2252539 (E.D. Ark. 2006).

Plaintiff also alleges that he was not provided a classification hearing until fourteen years after the 1991 disciplinary hearing. According to the grievances Plaintiff attaches to his complaint, as well as the appeals from those grievances, it is unclear whether his classification level changed in any way as a result of the classification hearing. The Deputy/Assistant Director's Decision, dated September 17, 2007, states that on August 16, 1991, as a result of the disciplinary hearing finding that Plaintiff had raped an inmate, Plaintiff's classification was lowered to Class IV. The Court is unaware whether Plaintiff's

class status improved between 1991 to 2005.  However, even if Plaintiff's classification was lowered at his 2005 classification hearing, his § 1983 claim still would fail.

Plaintiff has no liberty interest in any particular classification.  A prisoner has no legally protected property or liberty interest in security classification or the location of confinement.  See *Sandin*, *supra*.  See also *Carney v. Houston*, 33 F.3d 893, 894 (8th Cir. 1994) (stating that "[t]he Due Process Clause does not itself create a liberty interest in a particular prison classification"); *Sanders v. Norris,* 153 Fed. Appx. 403 (8th Cir. 2005) (unpublished per curiam) (holding that inmate does not have a constitutional right to a particular classification); and *Hartsfield v. Dep't of Corr.*, 107 Fed.Appx. 695, 696 (8th Cir. 2003) (unpublished per curiam ) (no liberty interests in particular classification).  Without the underlying liberty interest, Plaintiff cannot maintain an action for violation of his due process rights.

    C.    *Ex Post Facto Violation*

Plaintiff also alleges that the fourteen-year delay in his reclassification hearing, based on enactment of the 2003 Prison Rape Elimination Act violated his constitutional rights.  Based upon the attachments to Plaintiff's complaint, it appears that as a result of the 2005 classification hearing, Plaintiff was assigned to single-cell housing.  Viewing the facts as pled in the light most favorable to Plaintiff, Plaintiff's statement could be construed as an argument that his assignment to single-cell housing fourteen years after his disciplinary hearing violated the ex post facto clause of the United States Constitution.

The ex post facto clause prohibits a state from passing any law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Munger v. Erickson*, 979 F.2d 1323, 1325 (8th Cir. 1992). To violate the ex post facto clause, a law must impose "a greater punishment than the law in effect on the date of the offense." *Id.* A law does not impose ex post facto penalties unless the law was enacted for a punitive purpose. *Peeler v. Heckler*, 781 F.2d 649, 651 (8th Cir. 1986). The purpose of the ex post facto clause is to ensure "that legislative Acts give fair warning of their effect and also restrain arbitrary and potentially vindictive legislation." *Burnside v. White*, 760 F.2d 217, 220 (8th Cir. 1985) (quoting *Weaver v. Graham*, 450 U.S. 24, 28-29, 101 S.Ct 960, 963-964 (1981) (internal quotation omitted).

Even viewing the facts in the light most favorable to Plaintiff, this claim fails for several reasons. First, the policy (AM 05-01) adopted by the ADC effective May 11, 2005, in the wake of the Prison Rape Elimination Act is not a "law" for purposes of the ex post facto clause. This policy was not a legislative act passed by the state legislature. Rather, it was adopted by the ADC following the enactment of the Prison Rape Elimination Act by Congress in order to provide safety for inmates.

According to Arkansas statute, the Department of Correction has "exclusive jurisdiction over the care, charge, custody, control, management, administration, and supervision of all persons and offenders committed to, or in the custody of the state penitentiary." ARK. CODE ANN. § 12-27-103 (Michie 1994). Accordingly, it is within the

ADC's discretion to issue policies and regulations necessary to control and manage the inmate population.  See *Julien v. Meachum*, 618 F.Supp. 49, 52 (D.C. Okl. 1985) (holding that changes in the security classification system of inmates are not laws "for purposes of ex post facto analysis since they were promulgated as procedural guidelines within the basic framework of the discretion of the Department of Corrections").

Further, although Plaintiff's assignment to single-cell housing alters his conditions of confinement, such an assignment, by itself, does not constitute "punishment. "The constitutional prohibition against ex post facto laws was designed to secure substantial personal rights against arbitrary and oppressive legislative action, and not to obstruct mere alteration in conditions deemed necessary for the orderly infliction of humane punishment." *Glynn v. Auger*, 678 F.2d 760 (8th Cir. 1982) (quoting *Malloy v. South Carolina*, 237 U.S. 180, 183, 35 S.Ct. 507, 508 (1915).

In *Glynn*, a prison inmate sued alleging that the prison's change to a policy of "double celling" prisoners violated the ex post facto clause.  The district court dismissed the inmate's suit holding that: (1) "there was no legislative or administrative action which would qualify this procedure as an ex post facto action" and (2) "the action did not appear to be in the nature of punishment."  *Glynn*, 678 F.2d at 760.  The Eighth Circuit upheld the district court's decision and stated that the policy of double celling prisoners was not "within the ambit of the ex post facto clause."  *Id.* at 761.

Other courts have held that a "condition of imprisonment is not punitive for purposes of the ex post facto clause merely because it makes imprisonment more difficult for a particular prisoner. Rather, a condition is punitive, generally, only if it is intended to be punitive." *Payton v. Fielder*, 860 F.Supp. 606, 608 (E.D. Wis. 1994). See also *Dyke v. Meachum*, 785 F.2d 267, 268 (10th Cir. 1986) (stating that "in the absence of any showing of punitive intent, the Ex Post Facto clause does not bar a prison from changing the regulations governing their internal classification of prisoners"); *Hegge v. Thompson*, 106 F.3d 403, *2 (7th Cir. 1997) (unpublished opinion) (stating that "[r]easonable regulations of the conditions of prison confinement, and reasonable amendments to such regulations are not punishment, and do not violate the Ex Post Facto Clause").

Here, according to the documents Plaintiff attached to his complaint, the ADC adopted policy AM 05-01 after Congress enacted the Prison Rape Elimination Act of 2003. The stated purpose of the Act is to "make the prevention of prison rape a top priority in each prison system" and to "protect the Eighth Amendment rights of Federal, State, and local prisoners." Such purposes are hardly punitive in nature.

Further, the stated purpose of policy AM 05-01 is to "establish a zero tolerance standard for the incidence of [r]ape in Arkansas Department of Correction Institutions." Policy AM 05-01 provides that "any inmate that has been found guilty of the disciplinary charge of Rape will be reviewed by the Unit Classification Committee for possible assignment to single-cell housing, segregated from the general population." Accordingly, it

appears that policy AM 05-01 was enacted to protect the general population of inmates from those inmates known to have sexually violent histories. Such purpose should not be construed as punitive.

Moreover, Plaintiff's complaint indicates that his present conditions are not more severe than those to which he could have been subjected to prior to his reclassification hearing. Again, Plaintiff fails to state any additional hardship or improper treatment as a result of his placement in single-cell housing, aside from his general assertion that he prefers to live in the general population. Plaintiff's claim that Defendant violated the ex post facto clause by placing him in single-cell housing is without merit.

## IV.    Conclusion:

The Court recommends that Plaintiff's complaint be DISMISSED with prejudice, that the dismissal count as a "strike" against Plaintiff under 28 U.S.C. § 1915(g), and that Plaintiff's motion to proceed in forma pauperis be DENIED as moot.

DATED this 8th day of November, 2007.

_____
UNITED STATES MAGISTRATE JUDGE